**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MICHAEL L. MORGAN | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE NO. |
| vs. | : | |
| | : | 1:10-CV-03555-TWT |
| | : | |
| OCWEN LOAN SERVICING, LLC; | : | |
| MORTGAGE ELECTRONIC | : | |
| REGISTRATION SYSTEMS, INC.; | : | |
| AND MERSCORP, INC.; | : | |
| | : | |
| Defendants. | : | |

---

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

This matter comes before the court on a motion to dismiss which was

filed by defendants' Ocwen Loan Servicing, LLC (hereinafter referred to as

Ocwen"); Mortgage Electronic Registration Systems, Inc. (hereinafter

referred to as "MERS"); and Merscorp, Inc. (hereinafter referred to as

"Merscorp"). The motion claims that the Verified Petition and Complaint

(hereinafter referred to as the "Complaint") should be dismissed on the

grounds of insufficiency of process, insufficiency of service of process, lack

1

of personal jurisdiction, and failure to state a claim upon which relief can be granted. The defendants' claims and the arguments contained in their memorandum all rest upon misrepresentations. These claims not only lack merit, but they are frivolous and lack substantial justification, and therefore the motion must be denied.

## INTRODUCTION

The claims that the Complaint should be dismissed for insufficiency of process, insufficiency of service of process, and lack of personal jurisdiction are based upon the misrepresentation that Plaintiff was attempting service of process when Plaintiff served copies of the Complaint and other pleadings upon Scott B. Kuperberg, Esq., of Weissman, Nowack, Curry & Wilco, PC (who initially represented Ocwen) for purposes of the motions for a temporary restraining order and a preliminary injunction. This representation is false, and the claims based upon this false representation will be briefly addressed below, after responding to the claim that the Complaint does not state a claim upon which relief can be granted.

It is elementary that a motion to dismiss under Fed. Rule Civ. Proc. 12(b)(6) must be based upon the allegations of the complaint, construed in a light that is most favorable to the plaintiff, the non-moving party. The

defendants, however, simply ignore the overwhelming majority of the allegations of the Complaint and assert all nine counts of the Complaint "essentially arise from the same two (2) core allegations." (Defendants' Memorandum, p. 9) The two allegations that are supposedly "essential" to all nine counts of the Complaint are (a) the allegation that Ocwen mailed the notice of foreclosure sale to the wrong address (which is obviously true), and (b) the allegation that the Security Deed was void *ab initio*, because the Note was executed in favor of Guaranteed Rate, Inc. (hereinafter referred to as "Guaranteed Rate") and the Security Deed was executed in favor of MERS, as nominee for Guaranteed Rate.

The Complaint clearly does not rise or fall on the basis of either of these allegations. None of the counts set forth in the Complaint rest solely upon either (a) the failure to comply with the notice requirements or (b) whether or not a Security Deed granted to MERS is void *ab initio*. It is Ocwen, not MERS, that is attempting to foreclose.

Even if the Security Deed is not void *ab initio*, a foreclosure by Ocwen would still be wrongful, either (a) if MERS did not have the authority to assign the Security Deed to Ocwen, or (b) if the purported assignment to Ocwen is fraudulent. The defendants' memorandum ignores the Complaint's

3

allegations about these issues, does not even mention these issues, and does not discuss the cases which have ruled on these issues (not even cases which involve assignments from MERS to Ocwen).

The reason for this is obvious. When the facts alleged in the Complaint about these matters are construed in a light most favorable to Plaintiff, and when the legal issues which are involved are given appropriate consideration, it is obvious that the motion to dismiss must be denied.

Before going further, we wish to draw attention to the fact that the documents which the defendants have attached as exhibits to their memorandum contain evidence which support Plaintiff's contentions. A copy of the Note is attached to the memorandum as Exhibit "A." The memorandum itself contains an admission that the Note was "transferred to Taylor, Bean & Whitaker Mortgage Corporation". (Defendants' Memorandum, p. 3). **The copy of the Note submitted as Exhibit "A" bears a special endorsement to Taylor, Bean & Whitaker Mortgage Corporation** (hereinafter referred to as "TBW"). There **is no endorsement, either special or in blank, by TBW.**

Absent some proof of further negotiation of the Note by TBW, the inescapable conclusion is that Ocwen is not a secured creditor. Exhibit "A"

simply does not bear any evidence whatsoever that the Note was transferred to Ocwen. (The conclusory statement made by the defendants' counsel in their memorandum in support of their motion has to be disregarded.)

Exhibit "A" also evidences the fact that any attempt to assign the Note by MERS, which has never held any interest whatsoever in the Note, is void. MERS attempted to do so in the fraudulent assignment from MERS to Ocwen.

The defendants also submitted a copy of the Security Deed as Exhibit "B." Exhibit "B" evidences that the Security Deed was never delivered to MERS, who is named as the grantee in the Security Deed, but, instead, was delivered to Guaranteed Rate. A deed which is not delivered is not valid.

## STATEMENT OF FACTS ASSUMED TO BE TRUE FOR PURPOSES OF THIS MOTION TO DISMISS

It is elementary that, for purposes of a motion to dismiss, the allegations of the Complaint are assumed to be true (and they are construed in favor of Plaintiff). It is also elementary that the Court cannot consider any allegations or assertions made by the defendants' attorneys, whether made in the motion or the memorandum submitted in support thereof.

We will separately list below some of the facts which the Court must assume are true for purposes of this motion, and some of the mere conclusory

statements made by the defendants' counsel which cannot be taken into consideration, but on which the defendants' motion relies. (These "facts" which have been alleged by the defendants' counsel can only be considered in a motion for summary judgment, and, in such a motion, would have to be supported by an affidavit or other evidence.)

Allegations that are assumed to be true include the following:

The Security deed was never delivered to MERS (see copy of the Security Deed submitted by the defendants).

1. Ocwen is not the holder or the owner of the Note.

2. TBW is the holder or owner of the Note by special endorsement (see the Complaint and the copy of the Note submitted by the defendants).

3. TBW never negotiated the Note to another party.

4. The beneficial interests in the Security Deed were transferred to TBW by Guaranteed Rate.

5. The transfer of the Security Deed to TBW did not comply with Georgia law.

6. As of the transfers to TBW, MERS no longer held the Security Deed as a nominee for Guaranteed Rate.

7. Plaintiff gave notice to Guaranteed Rate to send notices to 110

Addison Court, Roswell, Georgia 30075.

8. All notices sent by all servicers of the loan were sent to 110 Addison Court, Roswell, Georgia 30075, except the notice of foreclosure sale.

9. TBW became the servicer of the mortgage loan, but the transfer of the Security deed did not comply with Georgia law, because it was not executed as required for a deed and it was not recorded.

10. All subsequent transfers of the security deed also failed to comply with the requirements of Georgia law.

11. The various transfers, after the closing of the loan transaction, of the Note and of the Security Deed separated the Note from the Security Deed.

12. The transfer of the Security Deed to TBW was not exempt from filing requirements.

13. TBW subsequently transferred the Note and the Security Deed to an unknown third party.

14. TBW made multiple transfers of notes and mortgages to third parties and may have made more than one transfer of the Note and the Security deed in the instant action.

15. None of the subsequent transfers complied with the requirements of

Georgia law for the execution of a transfer of a Security Deed or the recording thereof.

16. When TBW filed for bankruptcy, servicing rights, but not the Note and the Security Deed, were transferred to Ocwen.

17. The Note has never been negotiated to a third party by TBW in accordance with the requirements of the UCC as adopted by Georgia.

18. The Note is governed by the UCC as adopted by Georgia.

19. Ocwen did not give proper notice of the foreclosure sale.

20. Ocwen is not now and has never been a secured creditor of Plaintiff.

21. Ocwen is not entitled to pursue a foreclosure action against Plaintiff.

22. The current owner or holder of the Note, whoever that may be, is a general, unsecured creditor.

23. The MERS system of operation constitutes an illegal trust, because the transfers of the Security Deed did not comply with Georgia law.

24. It is illegal for MERS to serve as a corporate fiduciary.

The purported assignment of the Security Deed from MERS, as nominee for Guaranteed Rate, is fraudulent.

When the complaint herein is judged on the basis of its allegations, including the consideration of any instruments referred to therein, it is clear

that the motion to dismiss on the basis of failure to state a claim upon which relief can be granted must be denied.

## STATEMENTS MADE BY DEFENDANTS' COUNSEL
## THAT CANNOT BE CONSIDERED IN THIS MOTION

The Court must disregard the various assertions made by the defendants' attorneys in their purported statement of facts which do not reflect the allegations of the Complaint (as well as any such statements which may be made at a hearing on this matter). The statements which the Court must disregard include, but are not limited to, the following:

1.  The statement that the Note was last transferred to Ocwen. (Defendant's Memorandum, p. 3)

2.  The statement that Ocwen is the current registered lender in MERS. (Defendants' Memorandum, p. 3)

3.  The statement that the Plaintiff is in default in making his monthly payments pursuant to the terms of the Note and the Security Deed. (Defendants' Memorandum, p.3)

4.  The statement that Ocwen declared the entire outstanding balance due under the Loan immediately due and payable. (Defendants' Memorandum, p. 3)

5. The statement that Ocwen gave notice to Plaintiff that it had declared the entire outstanding balance due under the Loan immediately due and payable. (Defendants' Memorandum, p. 3)

6. The statement that Ocwen retained the law firm of Weissman, Nowack, Curry & Wilco, P.C., to conduct a nonjudicial foreclosure sale of the Property. (Defendants' Memorandum, p. 3)

7. The statement that Plaintiff supposedly attempted to serve Ocwen with process and the service copy of the complaint on November 1, 2010 (when Plaintiff served various pleadings for purposes of Plaintiff's request for a temporary restraining order and a preliminary injunction) (Defendants' Memorandum, p. 5, fn. 3)

8. The statement that, at the TRO hearing on November 9, 2010, Ocwen's counsel advised the Court and Plaintiff that the foreclosure sale did not go forward. (Defendants' Memorandum, p. 5)

9. The statement that the Court found that the Request for TRO and the Motion for Injunction were moot. (Defendants' Memorandum, p. 5)

10. The statement that the Court requested Ocwen's counsel prepare and submit a proposed order. (Defendants' Memorandum, p. 5)

11. The statement that Ocwen's counsel submitted a proposed order to

the Court. (Defendants' Memorandum, p. 5, fn. 4)

12. The statement that Plaintiff also submitted a proposed order to the
Court. (Defendants' Memorandum, p. 5, fn. 4)

## STATEMENT OF LAW

### Procedural Issues

On a motion to dismiss under Fed R. Civ. P. 12(b)(6), all material facts set
forth in the Complaint are assumed to be true and are construed in the light
most favorable to the nonmoving party. If matters beyond the complaint are
considered, e.g., because the complaint refers to them, the material facts
concerning such documents (such as that the documents are fraudulent) must
also be assumed to be true and construed in the light most favorable to the
nonmoving party. In the instant matter, this means that the facts alleged in
the Verified Petition and Complaint are assumed to be true, and they are all
construed in the light most favorable to Plaintiff.

In order to avoid dismissal for failure to state a claim, a complaint needs
to contain "only enough facts to state a claim for relief that is plausible on its
face." *Bell Atl. Corp v. Twombley*, 550 U.S. 544, 570 (2007).

Furthermore, leave to amend a complaint should be freely given, "when
justice so requires." Fed. R. Civ. P. 15(a)(2). While it is not necessary for

purposes of this motion, Plaintiff intends to file an amended Complaint.

## Substantive Issues

The defendants' arguments (a) that the Complaint should be dismissed for insufficient process, insufficient service of process, and lack of personal jurisdiction, and (b) that the Complaint should be dismissed for failure to state a claim upon which relief can be granted, because Plaintiff's claims are supposedly moot are frivolous and lack substantial justification. We will address these matters briefly below, but we will first address issues that relate to the argument that the Complaint fails to state a claim upon which relief can be granted, based on the allegations contained in the Complaint that relate to the Security Deed and the purported assignment thereof.

At the outset, it should be noted that the defendants' arguments are based solely upon their claim that MERS, as a nominee, is entitled to pursue foreclosure actions in its own name. All the cases which they cite held that MERS was entitled to foreclose (under the particular facts that were involved in those cases and based on the issued which were raised in those cases). The question in the instant action, however, is whether Ocwen is entitled to foreclose. Plaintiff contends that Ocwen is not entitled to foreclose, because (1) MERS did not have the authority to make an assignment of the Security

12

Deed to Ocwen, and (2) the assignment itself is fraudulent, i.e., it was not duly executed by officers of MERS and the signatures on the assignment are forgeries.

Now, in a nutshell, what are some of the important considerations when MERS is involved in a disputed mortgage loan transaction which is being litigated before a court? (1) The rights and functions (but not the legal validity) of MERS are defined by the mortgage, the deed of trust, or the security deed. (2) The security interest created by a mortgage, deed of trust, or security deed is typically granted to the lender, not to MERS. (3) MERS claims to hold only legal title and purportedly does so as a "nominee" for the lender. However, the documents do not contain any contractual definition of the term, "nominee." (4) MERS does not claim to be the owner or the holder of the promissory note, and MERS is not entitled to receive any of the payments due under the promissory note. "Mortgage Electronic Registration Systems, Inc.: A Survey of Cases Discussing MERS' Authority to Act," Norton Bankruptcy Law Adviser, Issue No. 8, August 2010, published by Thomas Reuters, Rochester, N.Y. (The editor-in-chief and the managing editors of the Norton Bankruptcy Law Adviser are all United States bankruptcy judges.)

Frankly, with respect to the alleged assignment, the defendants ask the Court to swallow a pig in a poke. By its terms, the Security Deed secures to Guaranteed Rate, not MERS, the debt evidenced by the Note. As an attachment to their memorandum, the defendants submitted a copy of the Note bearing a special endorsement from Guaranteed Rate to TBW in February 2008. There is no evidence that the Note was subsequently endorsed by TBW, either by special endorsement or in blank.

Yet, according to the defendants, **MERS is supposedly able to transfer the Security Deed, without any authorization from Guaranteed Rate or an assignee of Guaranteed Rate**, to Ocwen (which is only the servicer of the loan), solely for the purposes of foreclosure, **when** (according to the copy of the Note submitted to the Court by the defendants) **the owner and holder of the Note which the Security Deed secures is TBW**. Further, **the defendants also contend that MERS, which does not now and never has had any interest whatsoever in the Note can assign it, as the nominee of Guaranteed Rate**, to Ocwen, **when Guaranteed Rate had already negotiated the Note to TBW**. The defendants also claim that the Note, which is clearly subject to the provisions of the UCC as adopted by Georgia (since **the parties thereto, which include the Plaintiff, did not agree that**

**it would not be governed by the UCC)**, did not have to be negotiated in accordance with the provisions of the UCC.

I. **There is no provision whatsoever— by statute, in case law or otherwise— that exempts security deeds where the grantee holds title in a representative capacity, whether as a nominee or otherwise, from the provisions of O.C.G.A. Section 44-14-64.**

Assuming, *arguendo*, that a deed to secure debt where MERS is the grantee as the nominee for a separate entity is valid, such a security deed would be subject to, and would have to comply with, the provisions of O.C.G.A. Section 14-14-64, which **applies to all transfers of deeds to secure debt, including partial transfers.** The transfer of the beneficial rights under the Security Deed by Guaranteed Rate to an assignee, such as TBW, would be a partial transfer, which would require the execution of a separate instrument. For the Security Deed to continue to be enforceable, where the Note has been transferred, the Security Deed would also have to be transferred. Indeed, the MERS system, which only tracks assignments, rests on the assumption that the necessary assignments are made by the appropriate parties. If the assignments are not made, MERS cannot be the nominee of the lender's assigns.

Subsection (a) of O.C.G.A. Section 44-14-64 provides as follows:

**All transfers of deeds to secure debt shall be in writing;** shall be signed by the grantee or, if the deed has been previously transferred, by the last transferee; **and shall be witnessed as required for deeds.** O.C.G.A. Section

44-14-64(a).

MERS has intentionally chosen the term, "nominee," to describe its status as the grantee on mortgages, trust deeds and security deeds and has failed to define the term in any of these documents. It does, however, state that it holds bare legal title and repeatedly states that any rights that it has under any of these security instruments is solely as a nominee for the lender or as a nominee for the lender's successors and assigns.

Now, MERS cannot be the nominee for an assign of the lender (whether the originating lender or any subsequent person or entity which might fall under the definition of "lender" without there being an assignment of the lender's rights, title and interests under the security deed. This clearly constitutes a transfer of all the beneficial rights of the lender under the security instrument.

The provisions of O.C.G.A. Section 44-14-64 apply both to transfers in whole and to transfers in part of deeds to secure debt, i.e., this Code section would necessarily apply to the transfer of all the beneficial interests under a security deed. Subsection (c) of this Code section states as follows:

**"Transfer of a deed to secure debt and the indebtedness therein secured may be made in whole or in part; provided , however, that, where the transfer is made in part, that portion of the deed and the indebtedness therein secured to be transferred shall be stated upon a**

**separate instrument** and not upon the original deed.

This subsection adds the additional requirement that, where a partial transfer is made, that portion of the deed and the indebtedness which is being transferred must be stated in a separate instrument. Under the circumstances of the instant action, that separate instrument would have to be recorded.

We hope that we are spared the nonsensical argument that there is no transfer of the security deed (in whole or in part), because MERS has also been named as the nominee for the lender's successors and assigns. Words of assignment (i.e., "heirs and assigns" and "successors and assigns") have been used in deeds for hundreds of years and now appear in virtually every deed that is ever drafted; it would normally be malpractice to fail to include words of assignment. Without this language, the grantee, whether an individual or an entity, would not be able to transfer (assign) the property, and, upon the death of an individual or the termination of the existence of an entity the property would revert to the grantor.

If I were to argue that I could assign my property to someone without executing a deed naming the assignee as the grantee, because my deed was granted to both myself and my "heirs and assigns," I would be laughed out of court. The use of the term, "nominee," by MERS is a distinction without a

difference; if an assignment is not in fact made, MERS cannot be the

nominee of that assign.

Finally, it must be noted that, transfers of deeds to secure debt must be

recorded, where the transferor does not retain the right to service or to

supervise the servicing of the mortgage loan. Subsection (d) of O.C.G.A.

Section 44-14-64 provides as follows:

> (d) **A transfer of a deed to secure debt and the indebtedness therein secured** . . . in accordance with subsections (a) through (c) of this Code section by a financial institution having deposits secured by an agency of the federal government or a transfer by a lender who regularly purchases or services residential real estate loans aggregating a minimum of $1 million secured by a first deed to secure debt encumbering real estate improved or to be improved by the construction thereon of one to four family dwelling units, **where the transferor retains the right to service or supervise the servicing of the deed or interest therein, need not be recorded** if:
> (1) The original deed to secure debt has been recorded;
> (2) **An agreement in writing exists on or before the date of transfer** between the transferor and the transferee and sets forth the terms of the transfer and the interests of the parties thereto;
> (3) **Possession of the deed, the instrument of indebtedness, and the instrument of transfer** is taken by such new transferee for himself or in his representative capacity or by a representative of such transferee **which may include the transferor or any other transferee, provided that the agreement** in paragraph (2) of this subsection **provides for such party to take possession.**

It should be noted that, for this exception to the requirement for recording

all of the following requirements apply: (a) the transferor must retain the

right to service or to supervise the servicing of the mortgage loan, (b) there

must be a written agreement <u>on or before the date of transfer</u>, setting forth the terms of the transfer and the interests of the various parties, and (c) possession of (i) the security deed, (ii) the instrument of indebtedness (i.e., the promissory note in the instant action), and (iii) the instrument of transfer by one person or entity (which is included within the provisions of subsection (d)(3)).

N.B. THESE PROVISIONS DO NOT CONTEMPLATE AND DO NOT APPLY TO ANY MORTGAGE LOAN TRANSACTIONS WHERE THE PROMISSORY NOTE AND THE DEED TO SECURE DEBT ARE OWNED OR HELD BY SEPARATE PERSONS OR ENTITIES.

ALSO NOTE THAT, IF THE PARTIES HAVE FAILED TO COMPLY WITH THESE PROVISIONS ON OR BEFORE THE DATE OF TRANSFER, IT IS IMPOSSIBLE TO CURE THE DEFECT.

II. **Existing case law consistently states that, where the promissory note and the security instrument have been separated, the security instrument is unenforceable.**

The controlling facts of the instant action are analogous to the controlling facts in *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619 (Mo.Ct.App. 2009), rehearing and/or transfer denied (Apr. 6, 2009) and

transfer denied (June 30, 2009). In *Bellistri*, the Missouri Court of Appeals held that, **where (a) MERS as nominee was the beneficiary under a deed of trust, and (b) the note and mortgage had been separated, <u>the assignee, Ocwen Loan Servicing, LLC, had no standing to foreclose</u>**. In that case, MERS, as nominee for BNC, assigned a deed of trust to Ocwen. The assignment also stated that it "transferred any and all notes described in the deed of trust" to Ocwen.

Assuming *arguendo,* that MERS had authority to and validly assigned the deed of trust to BNC, this case holds that **the assignment of the deed of trust to Ocwen had no force, because MERS never held the promissory note**. The *Bellistri* court determined that, although Ocwen appeared to have an interest in the property, because the deed of trust had been assigned to it by MERS, Ocwen did not have a legally cognizable interest in the property. Id. at 622.

The Bellistri court stated that a note and security deed could be split, but described the effect of splitting the note and deed of trust as follows:

> In the event that the note and the deed of trust are split, the note, as a practical matter, becomes unsecured. **The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note.** Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default.

21

**The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation.** The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust. (Emphasis added.)

Id. at 623 (citing Restatement (3d) of Property (Mortgages) Section 5.4

(comment) (internal citations omitted.)

The *Bellistri* court also stated that, when the holder of a note transfers or

assigns the note, the deed of trust is also transferred.

> Effectively, the note and deed of trust are inseparable, and when the promissory note is transferred, it vests in the transferee "all the interest, rights, powers and security conferred by the deed of trust upon the beneficiary therein and the payee in the notes.

Id. at 623 (quoting St. Louis Mut. Life Ins. Co. v. Walter, 46 S.W. 2d 166,

170 (Mo. 1931).

*A fortiori*, where MERS is not the owner or the holder of the promissory

note (as in the instant case), it cannot transfer the note.

When it assigned the deed of trust, MERS attempted to transfer to Ocwen the deed of trust "together with any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due." . . . There is no evidence . . . that MERS held the promissory note or that BNC gave MERS the authority to transfer the promissory note. MERS could not transfer the promissory note; therefore the language in the assignment of the deed of trust purporting to transfer the note is ineffective. **MERS never held the promissory note, thus the assignment of the deed of trust to Ocwen separate from the note had no force.** (Emphasis added.)

Id. at 623-24 (internal citations omitted).

Courts that have determined that the note and mortgage have been separated have uniformly ruled that MERS does not have the authority to foreclose. The United States Bankruptcy Court for the District of Nevada, has denied motions for stay relief **in at least 18 cases** which were filed either by MERS or in the name of MERS as a nominee for another entity. *In re Hawkins*, 2009 WL 901766 (Bankr. D.Nev. 2009) is illustrative of these cases. In this case, the bankruptcy court ruled that MERS (1) must have constitutional standing, (2) must have prudential standing, and (3) must be the real party in interest. *In re Hawkins*, 2009 WL 901766 at *3. To have constitutional standing, a party must have some actual or threatened injury which would be redressed by a favorable decision. In particular, the bankruptcy court addressed the effect of splitting a promissory note and a deed of trust and the requirements for a valid assignment for purposes of foreclosure. The court stated,

For there to be a valid assignment for purposes of foreclosure both the note and the deed of trust must be assigned. A mortgage loan consists of a promissory note and a security instrument, typically a mortgage or a deed of trust. When the note is split from the deed of trust, "the note becomes, as a practical matter, unsecured." A person holding only a note lacks the power to foreclose because it lacks the security, and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to

payment on it. **"Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper."** Id. at *4 (Internal citations omitted) (emphasis added).

MERS appealed a number of the 18 adverse decisions entered by the bankruptcy court in Nevada. One district court held that MERS did not present sufficient evidence to establish either that (1) it was the real party in interest, or (2) it had an agency relationship with the real party in interest (for purposes of standing). When borrowers failed to make their payments, MERS did not suffer the loss of any money, and MERS did not prove that one of its members had possession of the note (when the motion was filed). *Mortgage Electronic Registration Systems, Inc. v. Chong*, 2009 WL 652286 D.Nev. Dec. 4, 2009).

One important question is whether MERS, as a nominee, has any authority to assign a mortgage or any authority to record a mortgage assignment. The cases are split on this question, and we do not presently know of any Georgia cases on the question. We think that the better answer is that MERS, acting on its own, does not have either the authority to assign or record a mortgage; in other words, the evidence must establish the identity of the current "nominor," and that MERS, as "nominee," is actually acting on behalf of the current nominor. In other words, there would have to be

evidence that there actually is an agency relationship between MERS and the current "nominor," and that MERS is acting within the scope of that agency.

One court has concluded that MERS does not have any authority to assign a note and mortgage, because MERS does not own the mortgage.

It is axiomatic that to be effective, an assignment of the note and a mortgage given as security therefore must be made by the owner of such note and mortgage and that an assignments (sic) made by entities having no ownership interest in the note and mortgage pass no title therein to the assignee. (Citation omitted). A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee.

LaSalle Bank National Association V. Lamy, No. 030049/2005, 2006 WL 2251721 at 2* (N.Y.Sup.Ct. Aug. 7, 2006).

The *Lamy* court noted that many cases have concluded that MERS could not foreclose, because it was not the owner or of the note and mortgage. This court then went on to conclude that MERS could not assign the note and mortgage, because it could not foreclose on the mortgage.

The Kansas Supreme Court, quoting *Bellistri, supra,* at length, stated, "Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable." *Landmark National Bank*

*v. Kesler*, 216 P.3d 158, 166-67 (Kan. 2009). This court went on to ask, "What stake in the outcome of an independent action for foreclosure could MERS have?," concluding, If MERS is only the mortgagee, without ownership of the mortgage instrument, it does not have an enforceable right." Id. at 167.

Also, see *In re Vargas*, 396 B.R. 517, which includes the following quote from *Carpenter v. Longan*, 16 Wall. 271, 83 U.S. 271, 275, 21 L.Ed. 313 (1872): "While the note is `essential,' the mortgage is only `an incident' to the note."

The defendants reliance on *Decatur Federal Savings & Loan Ass'n v. Gibson*, 268 Ga. 362, 489 S.E.2d 820 (1997) is misplaced. It simply does not provide any basis for the defendants' claim that a promissory note may be split from the security instrument (i.e., owned or held by two separate persons entities) and can be enforced separately. In that case, Decatur Federal Savings & Loan Association (hereinafter referred to as "Decatur Federal") cancelled a note by mistake. The Georgia Supreme Court held that the cancellation of the note by mistake without payment could itself be canceled by a court of equity. That court then also stated that "the security deed stands alone so long as the underlying debt remains." 268 Ga. at 364,

489 S.E.2d at 822. What is important to note here is that **Decatur Federal** was the holder of the note, and **Decatur Federal** was the grantee of the security deed. In other words, this case simply does not support the defendant's contention that a promissory note and a security deed which supposedly secures that promissory note can be issued to or subsequently be held by different entities. The defendants' position leads to the absurd conclusion that a homeowner could be required to pay the same indebtedness multiple times, because one entity claims ownership of the underlying debt, a different entity holds the promissory note, and a third entity is the grantee (or transferee) of the security deed.

Instead, the *Gibson* case stands for the proposition that, where the promissory note (owned or held by the same person or entity) becomes unenforceable (e.g., cancelled by mistake or barred by the statute of limitations), but the underlying debt remains, the security deed may still be enforced (by the same person or entity that owned or held the note).

The defendants also refer to O.C.G.A. Section 44-14-64(b), which provides as follows:

(b) Transfers of deeds to secure debt . . . shall be sufficient to transfer the property therein described and the indebtedness therein secured, whether the indebtedness is evidenced by a note or other instrument . . . .. O.C.G.A. Section 14-14-64(b).

This provision cannot apply, however, where the note (and the indebtedness) has already been transferred. Since Guaranteed Rate transferred the Note to TBW in February 2008, even if MERS, as a nominee for Guaranteed Rate, could assign the Security Deed to Ocwen in June 2010, that assignment could not transfer the indebtedness (which was previously transferred to TBW).

The defendants also quote the *Nicholson* case, which stated that, "to the extent that there was any problem regarding the separation of the Security Deed from the Note, such defect has been cured." *Nicholson*, 2010 WL 2732325 at *4. In that case, however, the defendant held both the note and the security deed. There is no basis for contending that the problems caused by the separation of the Note and the Security Deed in the instant action have been cured. Indeed, it is difficult to imagine circumstances where there could be a cure for that problem in the instant action.

The defendants also rely upon some cases which have concluded that MERS has the authority to foreclose. These cases are not dispositive in the instant matter for two reasons. First, MERS is not the party who is attempting to foreclose against Plaintiff. The party who has published a notice of sale by foreclosure of Plaintiff's property is Ocwen, so the question

in the instant case is not whether MERS has authority to foreclose against Plaintiff, but whether Ocwen has authority to foreclose against Plaintiff. Second, the claims stated in the Complaint are not based solely upon the allegation that the Security Deed is void, because MERS is named as grantee. They also challenge the separation of the Note and the Security Deed (which has not been cured, and which Plaintiff claims cannot be cured). Third, Plaintiff has raised issues which were not addressed in the cases cited by the defendants. Fourth, one has to do an analysis of the dispositive facts of each case to determine if they are analogous to the dispositive facts in the instant matter. When one examines the underlying facts in the cases cited by the defendants, it is obvious that these cases are not on point.

With regard to issues concerning MERS, the first case cited by the defendants is *Taylor Bean & Whitaker Mortgage Corp. v. Brown*, 276 Ga. 848, 583 S.E.2d 844 (2003). The defendants' memorandum included a quotation from that case, as if that quote provided some sort of general stamp of approval for the use of MERS as a nominee in deeds to secure debt. *Brown* simply does not do that.

The quotation from *Brown* which the defendants include in their memorandum is pure dicta, and the holding in the case does not rely upon

that quote. It does not even appear in the body of the decision, but is contained in a footnote. 276 Ga. at 848, n. 1, 583 S.E. 2d at 845 n. 1.

The defendants also cite several cases which they say recognize that MERS may hold a borrower's security deed as nominee for the current holder of the borrower's debt and that MERS may foreclose on a mortgage. These cases include *Trent v. Mortgage Elec. Registration Sys., Inc.*, 288 Fed.Appx. 571, 572 (11th Cir. 2008)(an unpublished decision); *Mortgage Elec. Registration Systems, Inc. v. Revoredo*, 955 So.2d 33. 34 (Fla.Dist.Ct. 2007); and *Nicholson v. OneWest Bank*, No. 1:10-CV-0795, 2010 WL 2732325, *4 (N.D.Ga. Apr. 20, 2010 (an unpublished decision by a federal magistrate, subsequently adopted by the district court judge).

Regardless of the import or weight of any of these cases, it must be noted that they do not apply to the instant action, because MERS is not attempting to foreclose in this case. This case concerns the attempt to foreclose by an alleged assignee of MERS, where the Plaintiff claims that the purported assignment is invalid for several reasons. In addition, the first two cases were decided under Florida law.

Furthermore, on the appeal of the *Revoredo* case, the Third District Court of Appeal of the State of Florida noted that MERS was the holder of the note

(by delivery), which that court states is "in accordance with the usual practice" in Florida. *Mortgage Elec. Registration Sys., Inc. v. Revoredo*, No. 3D05-2572 (March 14, 2007). In the instant action, Ocwen is **not** the holder of the promissory note.

A Florida case which is also illustrative of this point is *Mortgage Electronic Registration Systems, Inc. v. Azize*, 965 So.2d 151 (Fla.Dist.Ct.App. 2007). In that case, unlike the instant action, MERS alleged that it was the owner and holder of the promissory note. The lower court had ruled that MERS could not properly bring the foreclosure action, because it was not the owner of the beneficial interest in the note. The Florida appellate court did not find that MERS could proceed without owning a beneficial interest in the note. It merely found that the allegation in the pleadings that it was the owner and holder of the note had not been challenged.

**III. The parties to the subject promissory note (one of which is the Plaintiff) did not contract to take it outside the UCC; therefore, the promissory note is subject to the UCC, as adopted by Georgia, including the provisions governing negotiation.**

If the parties to a promissory note enter into an agreement that it will not be governed by the UCC, then the UCC would not apply. In the

instant action the parties to the Note (Plaintiff being one of the parties) did not enter into such an agreement; therefore, the UCC does apply.

The parties to a subsequent negotiation of the promissory note would not be able to take the promissory note out from under the provisions of the UCC without the agreement of the Plaintiff. Furthermore, there is no evidence that any parties to a subsequent negotiation of the note ever attempted to remove it from being governed by the UCC, and this would not make much sense, since this would deprive them of the protections which the UCC affords to a holder in due course.

As a matter of actual practice in the securitization of mortgages, pooling and servicing agreements have not attempted to remove promissory notes from being governed by the UCC, but have added the additional requirement that the promissory notes be transferred to certain entities by special endorsement (and not in blank). These entities are generally bankruptcy-remote.

## IV. The MERS system, as actually operated, constitutes an illegal trust under the laws of Georgia.

Assuming *arguendo*, that the form in which MERS represents its operation is legal, i.e., that a security deed granted to MERS as the

nominee for a lender and for the successors and assigns of that lender, the actual operation of the system, where the required assignments were seldom, if ever, made, constitutes an illegal trust under the laws of Georgia.

The "nominors" in the numerous security deeds that have been granted to MERS as a nominee in Georgia have transferred and retransferred the promissory notes which the security deeds purport to secure. However, the "nominors" have seldom, if ever, complied with the Georgia law which governs the assignment of their beneficial interests under the security deeds.

This failure to comply with Georgia law is obviously true in the instant action, but is also true in thousands of other mortgage loans.

The effect of this is to make the MERS arrangement an illegal trust, where MERS, as trustee, holds legal title, and the beneficial interests in the mortgage loans are purportedly transferred by transferring only the notes (and tracking the transfers of the notes on the MERS system).

The simple fact of this matter is that the members of the MERS organization, time and time again, have not complied with the requirements of MERS itself. In Georgia, in order to make the system

work, all of the partial transfers (the assignments of beneficial interests) of the security deeds by members of MERS would have to have complied with the requirements for transferring deeds. In addition, where the servicer did not retain servicing rights (or the right to supervise servicing), the assignments would have to have been recorded.

Furthermore, prior to foreclosure, all of the assignments (including those otherwise exempt from recording) would have to have been recorded to reflect the complete chain of title, because other Georgia law requires the recording of these assignments prior to any foreclosure sale.

### V. Plaintiff has a minimum of 120 days from the filing of the action, i.e., until March 1, 2011, to complete service of a summons and a copy of the complaint upon each defendant.

The defendant's entire argument rests on the ridiculous assumption that the Plaintiff has not prepared and delivered summonses for each defendant (with a copy of the Complaint attached to each summons) and will not do so in a timely manner, because Plaintiff served a copy of the Complaint upon Scott B. Kuperberg, Esq., of Weissman, Nowack, Curry & Wilco, PC (who then represented Ocwen), on November 1, 2010, for purposes of the motion for a temporary restraining order and the motion for a preliminary injunction.

Quite to the contrary, Plaintiff has already delivered the required

summonses (with a copy of the Complaint attached to each summons) to the clerk of court for service by the United States Marshall's Office, and service does not have to be completed until March 1, 2011. Fed.R.Civ.P. 4(c)(1).

Pursuant to Fed.R.Civ.P. 4(m), if a defendant has not been served within 120 days after the filing of the complaint, the defendant may make a motion to dismiss the action (or the court may act *sua sponte*). However, even then (i.e., after expiration of the 120-day period), if good cause is shown, the court must extend the time for service for an appropriate period.

The defendants are obviously a bit premature in filing a motion to have this action dismissed for insufficiency of process, insufficiency of service of process, and lack of personal jurisdiction. The 120-day period does not expire until March 1, 2011 (the Complaint having been filed on November 1, 2010).

**VI.  There are no counts that are based solely upon Ocwen's failure to give notice of the foreclosure sale in accordance with Georgia law and the terms of the Security Deed.**

For purposes of this motion based upon failure to state a claim upon which relief can be granted, all allegations of the Complaint are construed in the light most favorable to Plaintiff. The defendants here have done

exactly the opposite. From the fact that the Complaint contains allegations concerning the obvious failure of Ocwen to comply with Georgia requirements for notice of foreclosure sale, the defendants leap to the conclusion that any count which mentions this violation is moot. This contention is frivolous and lacks substantial justification. Even if all the allegations concerning this violation were removed from the Complaint, all nine (9) counts would still state claims upon which relief can be granted.

Indeed, assuming *arguendo*, that the Motion for Preliminary Injunction is moot (which Plaintiff denies), Plaintiff would still be entitled to relief for the wrongful foreclosure for which Plaintiff had to obtain a temporary restraining order and a preliminary injunction to stop.

The defendants' argument is based upon the fact that the Court concluded at the hearing on the Motion for Temporary Restraining Order and the Motion for Preliminary Injunction that the matter was moot, because Ocwen's counsel stated at the hearing that the November 2, 2010, sale had been abandoned. We respectfully submit that this conclusion is erroneous for the following reasons. (a) This motion must be based on the allegations of the Complaint, not on a finding of the Court. (b)

Despite the indication by the Court that it was going to issue an order dissolving the temporary restraining order and the preliminary injunction, the Court has not done so (probably due to reservations about the Court's initial conclusion). (c) The Court's initial determination that the matter is moot was based solely upon statements made by Ocwen's counsel without any evidentiary support whatsoever. (d) Ocwen's counsel also clearly stated that Ocwen would continue the attempt to foreclose against Plaintiff. (e) Plaintiff's claims for injunctive relief are not based solely upon the failure to give proper notice.

For the claims for injunctive relief to be moot, Ocwen would need to consent to an order cancelling the purported assignment of the Security Deed to Ocwen by MERS. Furthermore, even if the claims for injunctive relief were moot, the other counts in the Complaint would still state claims upon which relief can be granted.

## CONCLUSION

For all the reasons stated, Plaintiff respectfully submits that the Defendants' Motion to Dismiss must be denied.

This 9th day of December 2010.

Respectfully submitted,

MICHAEL L. MORGAN
Petitioner-Plaintiff
Pro se

110 Addison Court
Roswell, Georgia 30075
(404) 396-2694

## AFFIDAVIT OF SERVICE

Personally appeared before me, Michael L. Morgan, who first being duly sworn, deposes and says that he is the petitioner-plaintiff in the above-entitled action, and that he has served defendants Ocwen Loan Servicing, LLC; Mortgage Electronic Registration Systems, Inc.; and Merscorp, Inc. therein with a copy of Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss by depositing a copy thereof in the United States mail, postage pre-paid, in a properly addressed envelope, on December 9, 2010, to the following address:

> Kent E. Altom, Esq.
> Meredith M. Barnes, Esq.
> McCalla Raymer, LLC
> Six Concourse Parkway
> Suite 2800
> Atlanta, Georgia  30328

MICHAEL L. MORGAN
Petitioner-Plaintiff
Pro se

Sworn to before me,
This 9th day of December 2010.

NOTARY PUBLIC
My Commission expires:
(SEAL)

CAROL K CREASY
Notary Public
Cobb County
State of Georgia
My Commission Expires Oct 17, 2011

39