## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| MICHAEL L. MORGAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:10-CV-3555-AT |
| | : | |
| OCWEN LOAN SERVICING, | : | |
| LLC, MORTGAGE | : | |
| ELECTRONIC REGISTRATION | : | |
| SYSTEMS, INC., and | : | |
| MERSCORP, INC. | : | |
| | : | |
| Defendants. | : | |

### ORDER

The action is presently before the Court on Defendants' motion to dismiss ("motion") [Doc. 15], filed on November 22, 2010.  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## I.     Background[1]

Plaintiff filed his complaint against Ocwen Loan Servicing, LLC ("Ocwen"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Merscorp, Inc. ("Merscorp") on November 1, 2010.  In the complaint, Plaintiff raises state law claims

---

[1]   The facts described here are taken from Plaintiff's complaint [Doc. 1] and presumed true for purposes of resolving Defendants' motion to dismiss.  *See infra* Part II.

against Defendants for declaratory judgment, injunctive relief, cancellation of deed to secure debt, slander of title, quiet title, wrongful foreclosure, intentional infliction of emotional distress, and negligence. (Compl. at 1-20.) He also raises a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961-1968. (*Id*. at 20-22.)

Plaintiff's claims for declaratory judgment, cancellation of security deed, slander of title, and quiet title rest on the fact that he obtained a residential mortgage loan from Guaranteed Rate, Inc., and in connection with the loan he executed a promissory note to Guaranteed Rate and a deed to secure debt in favor of MERS "as nominee" for Guaranteed Rate. (*Id*. ¶¶ 11-13.) He alleges that because MERS had no pecuniary interest in the transaction, and was acting solely as "nominee" for the lender, the security deed to MERS is void. (*Id*. ¶¶ 19, 20.)

Plaintiff's claims for injunctive relief, wrongful foreclosure, intentional infliction of emotional distress, and negligence are based on allegations that Ocwen commenced a nonjudicial foreclosure against his property (1) when Ocwen was not the holder of the promissory note, and (2) without sending the statutorily required notice of foreclosure sale to the proper address. (*Id*. ¶¶ 24-27.) Plaintiff's RICO claim is based on allegations that Defendants fraudulently used MERS in mortgage

AO 72A
(Rev.8/82)

transactions, mailed fraudulent notices of foreclosure, and committed other unlawful acts.  (*Id.* ¶¶ 79-80.)

Defendants filed a motion to dismiss the complaint on November 22, 2010, that contended:  (1) Plaintiff failed to effect service of process, (2) Plaintiff's claim for wrongful foreclosure based on Defendant's failure to properly mail the foreclosure notice was moot, because Defendant canceled the November foreclosure sale, and (3) all counts based on allegations that the security deed is void failed to state a claim. (Defs.' Mem. Supp. Mot. Dismiss at 6-15.)  Plaintiff filed a response in opposition to the motion to dismiss on December 9, 2010,[2] and Defendants filed a reply on December 22, 2010.

On December 30, 2011, all Defendants executed the waiver of service of summons, which was filed with the Clerk's office on January 3, 2011.  (Waiver of Service of Summons, Jan. 3, 2011.)

## II.   Motion to Dismiss Standard

In determining whether a complaint states a claim upon which relief can be granted, courts accept the factual allegations in the complaint as true and construe them

---

[2] Plaintiff exceeded the twenty-five-page limit imposed by the local rules in his response brief.  *See* Local Rule 7.1(D).  Because Plaintiff is appearing *pro se*, he is entitled to some lenience from this Court regarding the formalities of litigation. However, Plaintiff is advised in the future to keep any original briefs to no more than twenty-five pages, and reply briefs to no more than fifteen pages.

in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). To survive a motion to dismiss, a complaint must allege facts that, if true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations omitted). A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

The Court recognizes that Plaintiff is appearing *pro se*. Thus, his complaint is to be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted).

## III. Analysis

### A. Service of Process

As Defendants executed the waiver of service on December 30, 2010, their arguments for dismissal based on insufficient process, insufficient service of process, and lack of jurisdiction are moot. (*See* Waiver of Service of Summons, Jan. 3, 2011.) Defendants' sole basis for alleging a lack of personal jurisdiction was the (previously

true, but no longer so) assertion that service had not been effected under Rule 4. (Defs.' Mem. Supp. Mot. Dismiss at 6-8.)

### B.   Alleged Failure to Send Notice of Foreclosure

Defendants argue that Plaintiff's claims arising out of failure to send the foreclosure notice to the proper address are moot because the foreclosure did not go forward on November 2, 2010.  However, a court may refuse to dismiss as moot claims in which the former controversy is one "capable of repetition, yet evading review." *United Steelworkers of America v. Bishop*, 598 F.2d 408, 412 (5th Cir. 1979) (internal citations omitted).[3]  Claims will be preserved for review on this basis when they meet the following criteria: (1) "the challenged action was too brief in duration to be fully litigated prior to its cessation or expiration," and (2) there is a reasonable likelihood that the plaintiff will face the same challenged conduct again.  *Id*.

As Plaintiff is still in default on his mortgage, and the Court's predecessor judge terminated the injunction barring foreclosure on January 3, 2011, it is very likely that Defendants will again attempt a nonjudicial foreclosure.  Since the statutorily required notice of foreclosure sale is only required to be sent 30 days prior to the sale date, there would not likely be time to adjudicate this issue should it arise again by virtue of

---

[3]   In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

another foreclosure sale notice mailed to the incorrect address. *See* O.C.G.A. § 44-14-162.2. Plaintiff contends that Defendant failed to send proper notice, despite his written provision of an updated address. (Compl. ¶ 16.) Under these circumstances, the Court declines to dismiss as moot Plaintiff's claims for wrongful foreclosure arising out of failure to give the required foreclosure notice.

### C.   Validity of the Security Deed and Wrongful Foreclosure

The issues presented here regarding ownership of the note and the effectiveness of an assignment executed by MERS have been the subject of much litigation, in this district and throughout the country. Therefore, the Court takes this opportunity to carefully address the complex issues presented.

The following are the facts relevant to these claims that must be presumed true for purposes of the instant motion. Plaintiff obtained a residential mortgage loan from Guaranteed Rate. (Compl. ¶ 9.) Like most residential mortgages in Georgia, this transaction was memorialized by two documents: a promissory note and a deed to secure debt (or "security deed"). The original grantee of the promissory note was Guaranteed Rate. (*Id.* ¶ 11.) The original grantee of the security deed was MERS "as nominee" for Guaranteed Rate and its successors and assigns. (*Id.* ¶¶ 12-13.) Guaranteed Rate later transferred the note to Taylor, Bean & Whitaker. (*Id.* ¶ 14.)

Subsequently, MERS executed a purported assignment of the security deed to Ocwen. (*Id*. ¶ 64.)  Ocwen is not now and has never been the holder of the note.[4]  (*Id*. ¶ 25.)

### 1.    Validity of the Security Deed

A promissory note and a security deed are two separate, but interrelated, instruments. *See* Frank S. Alexander, GEORGIA REAL ESTATE FINANCE AND FORECLOSURE LAW, § 3:7 (2010-11 ed.).  The security deed arises from the indebtedness memorialized in the promissory note, and "the deed's power of sale depend[s] on default under the note." *Boaz v. Latson*, 580 S.E.2d 572, 578 (Ga. Ct. App. 2003), *rev'd on other grounds*, 598 S.E.2d 485, 487 (Ga. 2004).  Historically, the

---

[4]  The facts in the complaint must be presumed true at this stage. *Hill v. White*, 321 F.3d at 1335.  Defendants assert that the Court may consider documents referenced in the complaint, including the promissory note and the purported assignment of the security deed to Ocwen, without converting this motion to a motion for summary judgment.  However, Defendants are attempting to use these documents to dispute a central factual allegation of Plaintiff's complaint, compared to the securities cases wherein courts have considered on a motion to dismiss documents required to be filed with the SEC of which the contents, and not the truth, were at issue.  *See Bryant v. Avado Brands, Inc*., 187 F.3d 1271, 1278 (11th Cir. 1989) ("When SEC documents are relevant only to determine what statements or disclosures are actually contained therein, there can be little question as to authenticity, nor can the fact that such statements or disclosures were thus publicly filed be reasonably questioned."); *Oxford Asset Mgmt. Ltd. v. Jahar*, 297 F.3d 1182, 1188 (11th Cir. 2002) (documents outside the complaint may only be considered at the motion to dismiss stage to show their contents, not for the truth of matters asserted therein).  The Court must therefore assume at this motion to dismiss stage of the proceedings that Ocwen is not the holder of the note, based on the allegations of Plaintiff's complaint.  (Compl. ¶ 25.)  Furthermore, the documents attached to the motion to dismiss do not support any factual finding to the contrary, as an assignment of the security deed is not indicative of who holds the note, and the promissory note shows no endorsement to Ocwen.

7

note and security deed have traveled together.  If an originating lender decided to sell a mortgage loan, that lender would endorse and physically transfer the note (a negotiable instrument) to a new holder, and assign the security deed to that holder as well.  *See Bowen v. Tucker Fed. Sav. & Loan Assoc.*, 438 S.E.2d 121, 122 (Ga. Ct. App. 1993) ("the holder of a note who is also the grantee of a security deed has the right to exercise the power of sale in the security deed upon default").  The parties would then record the assignment in the county deed room, giving record notice to the homeowner and all the world of who held the mortgage.  Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. CIN. L. REV. 1359, 1362 (2009-10).

With the rise of securitization of mortgage loans, the financial services industry sought to maximize profitability by developing shortcuts to these cumbersome paperwork requirements.   Peterson, 78 U. CIN. L. REV. at 1368-69.  One such cost-saving method was to have the original lender endorse the note in blank, so that it would not have to be specifically endorsed to every holder in the chain of ownership.  In the securitization process, ownership of a note might be transferred four or five times, from the original lender to the issuer of the securities, through one or more special purpose entities, and finally to the trustee bank, which holds the legal interest in the note for the benefit of the securities holders.  *Id.* at 1367; Adam Ashcraft and Til Schuermann,

8

*Understanding the Securitization of Subprime Mortgage Credit*, 318 FEDERAL RESERVE

BANK OF NEW YORK STAFF REPORT at 5 (2008).

Along the same lines, the mortgage industry created MERS to facilitate tracking

ownership of mortgage loans without the necessity of executing and recording

assignments of the security deeds.  Peterson, 78 U. CIN. L. REV. at 1369.

The Georgia Supreme Court has described the MERS system as follows:

> MERS, which began operating in 1997, is a private company
> created by the mortgage banking industry for the purpose of
> establishing a centralized, electronic system for registering the
> assignments and sales of residential mortgages, with the goal
> being the elimination of costly paperwork every time a loan is
> sold . . . . Under the MERS system, the borrower and the original
> lender name MERS as the grantee[5] of any instrument designed
> to secure the mortgage loan.  The security instrument is then
> recorded in the local land records, and the original lender
> registers the original loan on MERS's electronic system.
> Thereafter, all sales or assignments of the mortgage loan are
> accomplished electronically under the MERS system.

*Taylor, Bean & Whitaker v. Brown*, 583 S.E.2d 844, 845 n.1 (Ga. 2003) (internal

citations omitted).

Whereas the cost-saving benefits to the mortgage banking industry of the MERS

system are clear, its harmony with Georgia real estate law is less evident.  Indeed, the

use of MERS as a record "holder" of the security instrument (and tracking system for

actual ownership of same) has created a great deal of confusion for homeowners

---

[5]  MERS is listed on the original security deed as the grantee of the instrument
"as nominee" for the lender and lender's successor and assigns.

attempting to communicate with the owner of their loan, as well as for judges and lawyers attempting to parse out ownership of the debt and authority to foreclose. *See Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 168 (Kan. 2009).

Several of Plaintiff's claims rest on the argument that the security deed is <u>void</u> because of the fact that MERS was named as the grantee-as-nominee in the security deed rather than Guarantee Rate, the actual lender and payee on the note. This argument is unsupported by Georgia law. Separation of the note and security deed creates a question of what entity would have the authority to foreclose, but does not render either instrument void. *See Boaz*, 580 S.E.2d at 578; Alexander at § 3.7. Therefore, the Court dismisses Plaintiff's claims for declaratory judgment (Count I), cancellation of the security deed (Count III), slander of title (Count IV), and quiet title (Count V), all of which seek either injunctive relief or damages based on the assertion that the security deed is void because of the MERS involvement.

### 2.    Wrongful Foreclosure

Although the separation of the note and the security deed does not render either instrument void, it does create a substantial question of what entity has the right to foreclose when the borrower defaults on the loan. The Georgia Supreme Court has expressly reserved ruling on the question of "whether MERS, as nominee for the original lender and its successors, has the power to foreclose on an existing security

deed either with or without the participation of the existing note holder." *Taylor, Bean & Whitaker v. Brown*, 583 S.E.2d at 848.  Many other courts have questioned MERS's right to foreclose or effect an assignment of a security instrument, as it admittedly holds no beneficial interest in the note or security instrument.  *See Landmark v. Kesler*, 216 P.3d at 167 ("If MERS is only the mortgagee, without ownership of the mortgage instrument, it does not have an enforceable right."); *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 624 (Mo. Ct. App. 2009) ("MERS never held the promissory note, thus its assignment of the deed of trust to Ocwen separate from the note had no force."); *In re Agard*, No. 810-77338, 2011 WL 499959, at *16 (E.D.N.Y. Feb. 10, 2011) ("[W]ithout more, this Court finds that MERS's 'nominee' status and the rights bestowed upon MERS within the Mortgage itself, are insufficient to empower MERS to effectuate a valid assignment of mortgage.").

The question presented by this case is not whether MERS has authority to foreclose under Georgia law, but whether an assignment of a security deed from MERS to Ocwen empowers Ocwen to foreclose when Ocwen does not hold the note.[6]

---

[6] Defendants cite O.C.G.A. § 44-14-64 and *Redwine v. Frizzell*, 190 S.E. 789 (Ga. 1937) to support their argument that the purported assignment of the security deed also transferred the promissory note.  However, this statute and *Redwine* were authored at a time when the promissory note and the security deed where not commonly separated.  Neither support the proposition that a party who has never held the promissory note (MERS) could transfer it by an assignment of the security deed.

11

Georgia law authorizes the secured creditor, the holder of the obligation, to exercise a power of sale.  *See* O.C.G.A. §§ 44-14-162 *et seq*.[7]  The Georgia Supreme Court has clearly indicated that the right to foreclose lies with the party that holds the indebtedness:

> Could there be a more conclusive defense to the foreclosure than that the party prosecuting it was not the holder of the debt or demand secured by the mortgage, which he failed to produce when called on, and offered nothing to show that he controlled it, or to explain why it was not forthcoming at the trial?

*Weems v. Coker*, 70 Ga. 746, 749 (1883), *cited by Truitt v. Moister*, 11 B.R. 15 (Bankr. N.D. Ga. 1981); *see also Bowen*, 438 S.E.2d at 122*; Boaz*, 580 S.E.2d at 578; *Cummings v. Anderson*, 173 B.R. 959, 963 (Bankr. N.D. Ga. 1994) (foreclosure was null and void where the entity foreclosing did not have an actual assignment of the note and security deed), *aff'd*, 112 F.3d 1172 (11th Cir. 1997); *Weston v. Towson*, No. 5:04-CV-416, 2006 WL 2246206, at *6 (M.D. Ga. Aug. 4, 2006) ("[T]he holder of the note continues to retain remedies under the security deed so long as the debt evidenced by the note has not been satisfied.").

---

[7]  "The security instrument or assignment thereof vesting the *secured creditor* with title to the security instrument shall be filed prior to the time of sale in the office of the clerk of the superior court of the county in which the real property is located." O.C.G.A. § 44-14-162(b) (emphasis added).  "Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor *by the secured creditor* no later than 30 days before the date of the proposed foreclosure."  O.C.G.A. § 44-14-162.2(a) (emphasis added).

Plaintiff has alleged that Ocwen is attempting to foreclose when it is not the holder of the note.  (Compl. ¶ 25.)  Moreover, in publishing the foreclosure notice, Ocwen did not purport to be acting as agent for the actual holder of the note, but rather asserted that it was acting on its own behalf.  (*Id*. ¶ 61.)  These allegations clearly support a claim for wrongful foreclosure.[8]  The Court need not reach the question of whether an agent for the holder of the debt can carry out a power of sale foreclosure under Georgia law, as Ocwen did not advertise the foreclosure as agent for any disclosed principal.

Defendants further argue that there can be no cause of action for wrongful foreclosure here because the foreclosure has not taken place.  However, courts have recognized a cause of action for wrongful *attempted* foreclosure when a foreclosure action was commenced, but not completed, where plaintiffs have shown that a defendant "knowingly published an untrue and derogatory statement concerning the

---

[8]  Defendants cite *Nicholson v. OneWest Bank*, No. 1:10-CV-0795, 2010 WL 2732325 (N.D.Ga. Apr. 20, 2010) for the proposition that MERS has the ability to foreclose even if it does not hold the promissory note.  However, in *Nicholson* the court denied a motion for TRO because the plaintiff in that case failed to carry his burden on a TRO motion to show the likelihood of success on the merits when he failed to overcome the defendant OneWest's showing that it held both the note and security deed.  *Id.* at *4.  *Nicholson* is therefore inapposite to the facts that must be assumed true herein.

Defendants also cite *Trent v. Mortgage Electronic Registration Systems, Inc*., 288 Fed. Appx. 571 (11th Cir. 2008) (unpublished) and *Mortgage Electronic Registration Systems, Inc. v. Revoredo*, 955 So.2d 33 (Fla. Dist. Ct. App. 2007).  These cases interpret Florida law and therefore are not relevant to the instant case.

AO 72A
(Rev.8/82)

plaintiffs' financial conditions and that damages were sustained as a direct result." *Sale City Peanut & Milling Co. v. Planters & Citizens Bank*, 130 S.E.2d 518, 520 (Ga. Ct. App. 1963).[9]  Furthermore, Plaintiff is clearly seeking injunctive relief barring Ocwen from foreclosing wrongfully because it allegedly is not the holder of the note.  (Compl. ¶¶ 40-43, 63.)   A court may enjoin a nonjudicial foreclosure sale in a wrongful foreclosure action where the authority to foreclose is in question.   *See Atlanta Dwellings, Inc. v. Wright*, 527 S.E.2d 854, 856 (Ga. 2000); *West v. Koufman*, 384 S.E.2d 664, 666 (Ga. 1989); *Cotton v. First Nat'l Bank of Gwinnett Co.*, 220 S.E.2d 132 (Ga. 1975).

Thus, Plaintiff's claims for injunctive relief (Count II), wrongful foreclosure (Count VI), and negligence (Count VIII) are not subject to dismissal at this time.

### D.    Remaining Claims

Defendants have not made any argument for dismissal of the claims for intentional infliction of emotional distress (Count VII) or RICO (Count IX) other than their general argument that Ocwen had the right to foreclose, which cannot prevail at

---

[9]  It is not clear whether Plaintiff can prevail on a claim for wrongful attempted foreclosure, which requires a showing of intentional publication of derogatory and untrue financial information about the complainant. *See Sale City Peanut*, 130 S.E.2d at 520.  Plaintiff does not specify in the complaint whether he was actually in default on the mortgage at the time Ocwen commenced foreclosure proceedings against him or whether a default had been cured through a loan modification.  However, to the extent Plaintiff fails to establish the required elements for the tort of attempted wrongful foreclosure, his claim for wrongful foreclosure may proceed as a claim for injunctive relief.

AO 72A
(Rev.8/82)

this stage for the reasons cited above.   Therefore, because Defendants have not challenged these claims, Court does not address them in this Order.

**IV.    Conclusion**

   For the foregoing reasons, Defendants' motion to dismiss [15] is **GRANTED IN PART** and **DENIED IN PART**.   Plaintiff's claims for declaratory judgment (Count I), cancellation of the security deed (Count III), slander of title (Count IV), and quiet title (Count V) are **DISMISSED**.  Defendants' motion to dismiss Plaintiff's claims for injunctive relief (Count II), wrongful foreclosure (Count VI), negligence (Count VIII), intentional infliction of emotional distress (Count VII), and RICO (Count IX)   is **DENIED**.

   **IT IS SO ORDERED,** this 7th day of July, 2011.


                                           AMY TOTENBERG
                                           UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)