**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **MICHAEL L. MORGAN** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| vs. | : | |
| | : | **FILE NO. 1:10-cv-03555-AT** |
| **OCWEN LOAN SERVICING, LLC;** | : | |
| and **MORTGAGE ELECTRONIC** | : | |
| **REGISTRATION SYSTEMS, INC.;** | : | |
| | : | |
| **Defendants.** | : | |

---

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

This matter comes before the Court on Plaintiff's Motion to Alter or Amend

Judgment, which is based on the following grounds: (a) There was an intervening

change of law in this action (as to which Plaintiff was not allowed a reasonable

opportunity to be heard); (b) the Court's Order, dated June 6, 2013, granting

Defendant's Motion for Summary Judgment (the "Summary Judgment Order"),

contains manifest errors of fact; (c) the Summary Judgment Order contains

manifest errors of law; and (d) ) the Summary Judgment Order must be altered or

amended in order to prevent manifest injustice. Multiple bases for each foregoing

1

grounds for the motion to amend or alter the judgment herein are set forth in the motion.

## SUMMARY OF THE ARGUMENT

This Court dispensed of this action in a rather expeditious manner, after the Supreme Court of Georgia issued its decision in <u>You v. JP Morgan Chase Bank</u>, S13Q0040, 2013 WL 2152562 (Ga. May 20, 2013). The process was fundamentally unfair, because (a) Plaintiff was not afforded a meaningful opportunity to be heard, and (b) the Court did not consider the arguments or authority which Plaintiff desired to present to the Court, because Plaintiff was not given a chance to present those arguments and authority to the Court.

In a nutshell, the fundamental flaw in the *You* decision, the Summary Judgment Order, and many, if not all, of the recent foreclosure actions is that they attempt to resolve the question of the identity of the secured creditor by analyzing and interpreting the statutory provisions governing non-judicial foreclosure, rather than examining the contractual provisions concerning foreclosure which are contained in the applicable security deed. In the instant action, (a) the application of black-letter Georgia contract law to the subject security deed (the "Security Deed"), and (b) the application of the Uniform Commercial Code (the "UCC") of the state whose law controls the particular issue (applying Georgia conflicts law to

2

determine which state's law applies) to the subject promissory note (the "Note") inescapably leads to the conclusion that Ocwen Loan Servicing, LLC ("Ocwen"), is not Plaintiff's secured creditor and, thus, was not entitled to foreclose against Plaintiff's property.

The fact that the Georgia Supreme Court, in *You*, interpreted O.C.G.A. § 44-14-162.2 in a manner that might also include Ocwen is simply of no consequence in this action. The contractual provisions of the governing instruments exclude Ocwen both (a) from being Plaintiff's creditor, and (b) from being Plaintiff's secured creditor. In order to have the authority to foreclose under a power of sale contained in a security deed, whether judicially or non-judicially, a party must be the lender under the applicable security deed. The terms of Plaintiff's Security Deed clearly provides that the Lender is the same person or entity as the holder of the Note (the "Note Holder"). Ocwen cannot be the Lender under Plaintiff's Security Deed, because Ocwen clearly is not the Note Holder.

While the approach previously adopted by this Court might be superior to the approach adopted by the Georgia Supreme Court in *You* and would have promoted judicial economy, the fact the Georgia Supreme Court rejected that approach does not change the ultimate result in this action. It also does not change the result which this Court should have reached with respect to Defendant's Motion for

Summary Judgment, which clearly should have been denied.

## STATEMENT OF THE LAW

There are numerous issues which should be addressed herein; therefore, we will address the various issues in a fairly brief manner.

### I. THIS COURT FAILED TO PROVIDE PLAINTIFF A REASONABLE OPPORTUNITY TO BE HEARD ON THE BEARING OF THE YOU OPINION ON THIS CASE.

On January 17, 2013, this Court issued an order directing the parties "to individually file, within 10 days of the Georgia Supreme Court's issuance of its decision in *You*, a statement of no more than 5 pages addressing how th[at] decision bears on the disposition of Defendant[s'] Motion for Summary Judgment." [ECF 76, p. 10]

The *You* case involved three questions which were certified to the Georgia Supreme Court by the Honorable Julie Carnes, chief judge of the Northern District of Georgia. At the time when this Court issued its order requiring the filing of brief statements from both of the parties within 10 days of the issuance of the *You* decision, that requirement did not appear unreasonable. However, it was not possible at that time to ascertain or predict what questions or issues might arise from the issuance of the *You* decision itself.

It now appears that the *You* decision raises far more questions than it

4

answers, and that the questions and issues raised by that decision are of greater importance and complexity than the questions which were certified to the Georgia Supreme Court by Judge Carnes. The *You* Court, of course, heavily relied upon the briefs submitted by the parties and the *amici curiae*. The poor quality of those briefs, which failed to raise the most important and germane issues, led to the rendering of a decision which also failed to take the most important and germane issues into consideration. As a consequence, those issues were not resolved and, instead of providing an enduring resolution of the issues, the *You* case opened a can of worms and raises far more questions than it answers.

The instant case should be determined on the merits, not on the basis of an order establishing a procedural requirement issued at a time when the Court could not foresee what issues the parties might be entitled to address. As a cursory review of this brief clearly shows, it is now quite obvious that it is not reasonable to require Plaintiff to address the issues which he is now entitled to raise in a statement which was limited by the Court to only five (5) pages.

These issues which Plaintiff now raises should be resolved on the merits, either by being addressed by this Court or by certifying additional questions to the Georgia Supreme Court. If Plaintiff were a party to a certified questions

case, he would not fail to address these important questions.

Plaintiff therefore respectfully asserts that this Court's disposition of this matter in the Summary Judgment Order was clearly erroneous; and to the extent that this matter might lie within the sound discretion of the Court, that disposition was an abuse of discretion.

## II.     UNDER THE EXPRESS TERMS OF THE SECURITY DEED, OCWEN WAS NOT THE LENDER AND THUS WAS NOT ENTITLED TO FORECLOSE AGAINST PLAINTIFF'S PROPERTY.

Plaintiff will address in detail the reasons why Plaintiff should now be permitted to raise issues which support his arguments (a) that the *You* decision should be stricken down as unconstitutional, both under the federal constitution and the Georgia constitution; (b) that, as a matter of state law, the Georgia Supreme Court should reverse its decision in *You*, and (c) that the Court's finding that Plaintiff abandoned his challenge to the assignment fabricated by Ocwen, whereby Ocwen assigned the Security Deed to itself, is clearly erroneous.

We start here, however, by pointing out that, even under *You* (which acknowledges the long-standing view in Georgia that, to a large extent, security deeds are governed by contract law), when the law is applied to the facts, the inescapable conclusion is that Ocwen was not the lender under the security

deed. As a necessary consequence, Ocwen was not granted any power of sale by Plaintiff, was not Plaintiff's agent or attorney-in-fact, and thus was not entitled to foreclose against Plaintiff's property.

At bottom, Defendants claim that Ocwen, as servicer of the subject mortgage loan, was entitled to assign the Security Deed to itself, despite the fact that Ocwen has no basis whatsoever for contending that it is either the successor or the assign of Guaranteed Rate, Inc., the originating lender (except as to servicing rights). The notion that Mortgage Electronic Registration Services, Inc. ("MERS") has the authority to assign the beneficial rights in mortgages, including security deeds, willy nilly, to anyone is not merely meritless, but frivolous. MERS can only make an assignment of the beneficial rights under a mortgage, including any power of sale, to the successor or assignee of the lender, i.e., to the holder of the promissory note.

The *You* Court restated the long-standing Georgia law that non-judicial foreclosures are primarily controlled by contract law (not by a simplistic interpretation of the foreclosure statutes), as follows:

> As a privately authorized yet state-sanctioned remedy available in secured real estate transactions, the form and substance of power of sale foreclosures is determined first and foremost by the express terms of the underlying instrument." Id. Thus, Georgia courts have long held that non-judicial foreclosure is governed primarily by contract

7

law. Id; see also *Moseley v. Rambo,* 106 Ga. 597, 600(1), 32
S.E. 638 (1899) (power of sale "is a remedy, therefore, by
contract, intended to substitute the remedy by law"); *Gordon
v. South Central Farm Credit,* 213 Ga. App. 816, 817, 446
S.E.2d 514 (1994) (" 'a security deed which includes a power
of sale is a contract and its provisions are controlling as to
the rights of the parties thereto' ").

You v. JP Morgan Chase Bank, S13Q0040, 2013 WL 2152562 (Ga. May 20,

2013).

Applying contract law to the Security Deed necessarily leads to findings

of fact and conclusions of law that establish the following. (A) First, the "Note

Holder"[1] under the promissory note and the "Lender" under the Security Deed

are the same person or entity (and that is **not** Ocwen). (1) In the Note, "Lender"

is defined as "Guaranteed Rate, Inc." [ECF 66, #14, §1, p. 1] The Note also

provides that "[t]he Lender and anyone who takes this Note by transfer and who

is entitled to receive payments under this Note is called the 'Note Holder.'" *Id.*

Finally, §10, Uniform Secured Note, links the Note to Security Deed. §10

provides that the "Security deed   ...   protects the Note Holder from possible

losses   ...   [and] describes how and under what conditions [the borrower] may

be required to make immediate payment in full of all amounts [the borrower]

---

[11] "It is inherent in the character of negotiable instruments that any person in possession of an instrument which by
its terms is payable to that person or to bearer is a holder." UCC Comment on O.C.G.A. § 11-3-202(a).

owe[s] under this Note." [ECF 66, #14, §10, p. 2-3]

(2) In the Security Deed, "Borrower" is defined as the same person who is the borrower under the Note (Michael L. Morgan); "Lender" is defined as the same entity that is the Lender under the Note (Guaranteed Rate, Inc.); "Note" is defined as the same promissory note; and "Loan" is defined as "**the debt evidenced by the Note**, plus interest, any prepayment charges and late charges **due under the Note** ... ." [ECF 63; #7; Definitions (B), (D), (E), and (G), pp. 1-2 (Emphasis added)]

In addition, under the Security Deed, the transfer of rights in the property secures to the Lender (i.e., the Note Holder) "(i) the repayment of **the Loan**, and all renewals, extensions and modifications of **the Note**, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and **the Note**." [ECF 63; #7; Transfer of Rights in the Property, p. 2 (Emphasis added)] Furthermore, it is for the purpose of securing to the Lender (i.e., the Note Holder) the obligations of the Borrower that the Borrower grants and conveys the subject property to MERS; and this conveyance to MERS is "**solely as nominee for Lender [i.e., the Note Holder] and Lender's [i.e., the Note Holder's] successors and assigns.**"

**We do not wish to belabor the point by referring to each and every**

reference to Borrower and to Lender throughout the Security Deed; it is quite obvious that the Borrower under the Security Deed is the borrower under the Note, and that the Lender under the Security Deed is the Lender under the Note. N.B. It is indisputable that, when Plaintiff, as Borrower, covenanted and agreed with Lender concerning the provisions contained in § 22, Acceleration, Remedies, of the Security Deed, (a) the Note Holder is the person or entity required to give Borrower notice prior to acceleration; (b) the Note Holder is the person or entity that has the option to require immediate payment of all sums secured by the Security Deed; (c) the Note Holder is the person or entity that has the right to invoke the power of sale and other remedies permitted by law; (d) the Note Holder is the person or entity that is appointed as "the agent and attorney-in-fact for Borrower to exercise the power of sale," (e) the Note Holder is the person or entity that is required to "give a copy of a notice of sale by public advertisement" to Borrower; (f) the Note Holder is the person or entity that is required to conduct the foreclosure sale; and (g) the Note Holder is the person or entity that is appointed as "Borrower's agent and attorney-in-fact" to convey title to the purchaser at the foreclosure sale.

In addition to the fact that Ocwen was not entitled to enforce any of the

remedies provided to the Lender by the Security Deed (since it was not the Note Holder), under the express terms of the Security Deed, MERS lacked authority to assign the Security Deed to Ocwen. Under the Security Deed, MERS was the nominee of Lender, and Lender's successors and assigns. The original Lender (and Note Holder) was Guaranteed Rate, Inc. The Lendor's assigns (for which, according to the terms of the Security Deed, MERS is also the nominee or agent) are the persons or entities to which the Note was subsequently transferred (or assigned). MERS clearly had no beneficial interest in the Security Deed; the beneficial interest belonged to the Note Holder.

MERS *qua* nominee, i.e., as an agent, was not empowered to assign the Security Deed to just anyone, despite the fact that the Security Deed also includes words of assignment for MERS itself. An agent cannot appoint someone else to act as agent for the principal; the principal would have to do that. The Note Holder, of course, had an equitable right to the assignment of the Security Deed (and the current Note Holder would be the Lender's assign.) Ocwen was not the Note Holder; thus, MERS had no authority to assign the Security Deed to Ocwen. In the instant matter, the assignment to Ocwen is further complicated by the fact that the purported execution of the assignment by MERS was made by Ocwen employees. Ocwen thus was acting either (a) as

an agent for the parties on both sides of the transaction, i.e., as agent for the assignor and as agent for the assignee, or (b) Ocwen was assigning the Security Deed, without authority, to itself.

*En passant*, we also note that the fact that the Borrower and Lender may have agreed to include provisions in the Security Deed which also purport to grant a power of sale directly to MERS (in addition to the power of sale granted to the Lender in § 22 of the Security Deed) does not mean that MERS actually has a power of sale. The provision granting a power of sale is invalid, because it violates Georgia law. See O.C.G.A. § 23-2-114. A contract provision which violates the law is invalid; a contract provision which otherwise violates the law does not become valid and binding simply because the parties agree to violate the law.

### III. THE GEORGIA SUPREME COURT'S INTERPRETATION OF GEORGIA'S NON-JUDICIAL FORECLOSURE PROVISIONS VIOLATES THE DUE PROCESS CLAUSES OF THE FEDERAL AND STATE CONSTITUTIONS.

Both the Constitution of the United States and the Constitution of the State of Georgia prohibit the State of Georgia from taking action under which a person is deprived of property without due process of law. The due process clause of the federal constitution which applies to states is included in Section 1 of the Fourteenth

Amendment to that constitution, which, in pertinent part, provides as follows: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; **nor shall any State deprive any person of life, liberty, or property, without due process of law**; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const., 14th Amend., § 1 (Emphasis added). The due process clause of the Constitution of the State of Georgia provides, "**No person shall be deprived of life, liberty, or property except by due process of law**." Ga. Const. art. I, § 1, ¶ I (Emphasis added).

The due process clauses of the federal and state constitutions normally do not apply to non-judicial foreclosures, because no state action is involved. The non-judicial foreclosure statutes are normally strictly construed, because they are in derogation of the common law. When strictly construed, no state action is involved, because the non-judicial foreclosure statutes only restrict or regulate the exercise of a power of sale which was created by a contract between the parties.

In *You*, however, the Georgia Supreme Court did not strictly construe O.C.G.A. § 44-14-162.2, but construed that statute in a broad, expansive manner, which grants the right to foreclose to persons and entities based not on the contractual provisions of the applicable security deed, but on purported assignments of the security deed, which now are rarely executed by the Lender.

13

Under the Security Deed in the instant action (and the standard form used for security deeds in Georgia), only the Note Holder is entitled to prosecute a non-judicial foreclosure. Ocwen clearly is not the Note Holder in this case, but is merely the loan servicer. Extending the right to foreclose to Ocwen (and other loan servicers) based on the application on O.C.G.A. § 44-14-64(b) involves state action, both on the part of the Georgia state legislature and the Georgia Supreme Court. Thus, allowing Ocwen to prosecute a non-judicial foreclosure against Plaintiff's property violates the due process clauses of both the federal and the state constitution.

**IV.  THE GEORGIA SUPREME COURT'S INTERPRETATION OF GEORGIA'S NON-JUDICIAL FORECLOSURE PROVISIONS VIOLATES THE EQUAL PROTECTION CLAUSES OF THE FEDERAL AND STATE CONSTITUTIONS.**

Both the Constitution of the United States and the Constitution of the State of Georgia also contain an equal protection clause. The equal protection clause of the federal constitution which applies to states is included in Section 1 of the Fourteenth Amendment to that constitution, which, in pertinent part, provides as follows: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any per-

son of life, liberty, or property, without due process of law; **nor deny to any person within its jurisdiction the equal protection of the laws**. U.S. Const., 14th Amend., § 1 (Emphasis added). The equal protection clause of the Constitution of the State of Georgia states, "Protection to person and property is the paramount duty of government and shall be impartial and complete. **No person shall be denied the equal protection of the laws.**" Ga. Const. art. I, § 1, ¶ II (Emphasis added).

The application of O.C.G.A. § 44-14-64(b) by the Georgia Supreme Court to non-judicial foreclosures is contrary to and violates the provisions of the Uniform Commercial Code as consistently applied throughout the United States, including the State of Georgia (with the sole exception being the misinterpretation and application of this Code section when rejecting the use of the common, ordinary meaning of "secured creditor" and adopting a vague "non-definition" of that term for use in interpreting O.C.G.A. § 44-14-162.2.

The application of O.C.G.A. § 44-14-64(b) to defeat the Uniform Commercial Code (and the contractual provisions of the subject security deed) in the case of non-judicial foreclosures, but nowhere else, obviously is not impartial and clearly violates the equal protection clauses of both the United States Constitution and the Georgia Constitution.

The consistent application of O.C.G.A. § 44-14-64(b) to override the UCC would be devastating to the mortgage lending business in Georgia. E.g., if applied to warehousing lenders, the application of O.C.G.A. § 44-14-64(b) would mean that warehousing lenders would not have any meaningful security, despite having advanced huge sums of money for a Georgia mortgage loan transaction. The note id delivered to the warehousing lender shortly after closing a mortgage loan. The security deed, however, may never be delivered to the warehousing lender. (After closing, it is sent to the applicable clerk of court for recording.)

Warehousing lenders rely on their possession of the original promissory note to provide security for the transaction. If the assignment of the security deed, which is not forwarded to the warehousing lender immediately after closing (and which can, in any event, be assigned by a separate instrument) also transfers the indebtedness, the warehousing lender would have nothing to secure payment of the any advances made by it for Georgia mortgage loan transactions. Thus, warehousing lenders ought to cease doing business in the State of Georgia immediately.

**V. THE GEORGIA SUPREME COURT'S INTERPRETATION OF O.C.G.A. 44-14-64(b) VIOLATES THE IMPAIRMENT OF CONTRACTS CLAUSES OF THE FEDERAL AND STATE CONSTITUTIONS.**

Similarly, both the Constitution of the United States and the Constitution

of the State of Georgia contain provisions that impair the obligation of contracts.

The U.S. Constitution provides that "[n]o state shall … pass any … Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. Likewise, the Georgia Constitution provides, "No … laws impairing the obligation of contract … shall be passed." Ga. Const. art. I, § 1, ¶ X. The application of O.C.G.A. § 44-14-64(b) to foreclosures, either judicial or non-judicial, to abrogate the contractual provisions of the subject security deed violate these constitutional provisions.

## VI. IN THE YOU CASE, THE GEORGIA SUPREME COURT FAILED TO CONSIDER CONFLICT PROVISIONS OF THE GEORGIA UNIFORM COMMERCIAL CODE.

We are not here ignoring the fact that the Georgia Supreme Court is the final arbiter of Georgia law, but simply arguing that, in the light of Georgia authority (both statutory and case law) which is directly on point, which requires an opposite result, and which was not considered by the *You* Court, it is clearly erroneous for this Court to put blinders on and follow *You* like a sheep being led to the slaughter.

The question of the effect of the conflicts provisions of the Georgia Uniform Commercial Code upon the provisions of O.C.G.A. § 44-14-64(b) is a case of first impression which has never been addressed by the Georgia

Supreme Court. This Court could address that question, or the question could be certified to the Georgia Supreme Court. The answer is painfully obvious; the UCC trumps any statutory provisions relating to conveyances to secure debt, including O.C.G.A. § 44-14-64(b).

It is quite apparent that O.C.G.A. § 4-14-64(b), when applied to promissory notes which are negotiable instruments under the Georgia UCC, conflicts with both (a) the purposes and policies of the Georgia UCC and (b) the specific provisions of the Georgia UCC which govern the negotiation and transfer of negotiable instruments, including promissory notes. The purposes and policies of the Georgia UCC are as follows:

> (a) To simplify, clarify, and modernize the law governing commercial transactions;
> (b) To permit the continued expansion of commercial practices through custom, usage, and agreement of the parties;
> (c) To make uniform the law among the various jurisdictions.

O.G.C.A. § 11-1-102.

Under the UCC, "[n]egotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder. O.C.G.A. § 11-3-201(a). For an instrument payable to a specific person, negotiation requires both an indorsement by the holder and the transfer of possession (except for negotiation by a remitter); while transfer of

18

possession without any indorsement is sufficient for the negotiation of an instrument payable to bearer. O.C.G.A. § 11-3-201(b).

On the other hand, O.C.G.A. § 44-14-64(b) provides that

> **Transfers of deeds to secure debt** may be endorsed upon the original deed or by a separate instrument identifying the transfer and **shall be sufficient to transfer** the property therein described and **the indebtedness therein secured, whether the indebtedness is evidenced by a note or other instrument or is an indebtedness which arises out of the terms or operation of the deed**, together with the powers granted without specific mention thereof.

O.C.G.A. § 44-14-64(b) (Emphasis added). On its face, this provision appears to conflict with the Georgia UCC provisions relating to the negotiation of negotiable instruments; however, this section does not actually address circumstances where (a) the grantee of the security deed has no interest whatsoever in the indebtedness, or (b) the contractual provisions of the security deed limit the enforcement of the remedies provided by the security deed to the holder of the note.

What we are addressing in this section, however, is that the Georgia legislature has specifically and clearly mandated that, when the provisions of Article 3 of Chapter 14 of Title 44, relating to conveyances to secure debt, conflict with any provisions of the Georgia Uniform Commercial Code (the "Georgia UCC"), the provisions relating to conveyances to secure debt, **which include O.C.G.A. § 44-14-64(b)**, "**shall** yield to and [are] superseded by" the provisions of the Georgia

UCC. O.C.G.A. § 11-10-103. Thus, O.C.G.A. § 44-14-64(b) cannot be applied in a manner that conflicts with the Georgia UCC;[2] i.e., it cannot be interpreted as allowing the enforcement of the note by a party that is not the holder of the note.

The answers to the certified questions in *You* do not address the circumstances of the instant case, in which MERS, the grantee of the security deed, does not have any interest whatsoever in the indebtedness. The fact that O.C.G.A. § 44-14-64(b) provides that the transfer of a security deed is "sufficient to transfer the indebtedness secured therein" simply does not and cannot mean that a party, such as MERS, who has no interest whatsoever in the indebtedness, can transfer that indebtedness to some other party and thus alienate the indebtedness from the true owner thereof.

## VII. IN THE YOU CASE, THE GEORGIA SUPREME COURT FAILED TO CONSIDER THAT, UNDER THE GEORGIA CONFLICTS RULE, THE TRANSFER OF A NOTE IS GOVERNED BY *LEX LOCI CONTRACTUS*.

It is uncontroverted in the instant case that the promissory note was not located in Georgia at the time when the purported assignment of the Security Deed was executed. The traditional rule that *lex loci contractus* controls issues involving the transfer of a note was adopted by Georgia more than 165 years ago (and still continues to be the rule in Georgia).

---

[2] Any contention that O.C.G.A. 44-14-64(b) was adopted after the Georgia UCC was adopted is meritless. Both Article 3 of Chapter 14 of Title 44 and the Georgia UCC have the same effective date, which is November 1, 1982.

In 1847, the Georgia Supreme Court applied the law of the place of the contract, i.e., the location of the note at the time it was negotiated, to determine the validity of the indorsement of a note. In Cox v. Adams, that Court stated that "[t]he indorsement *was a new contract;* and the law of *the place of that contract* governs it. It is as much under the operation of the rules hereinbefore promulgated, as if it was a primary original contract." Cox v. Adams, 2 Ga. 158, 167 (1847). The negotiation of a note is treated as a separate contract, and the nature, validity and interpretation of that contract is governed by the location where that contract is made. "The general rule as to contracts of all kinds is that they are to be governed as to their nature, validity, and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a state other than that in which it was made." Tillman v. Gibson, 44 Ga. App. 440, 161 S.E. 630, 632 (1931). He place where the last act essential to the formation of the contract was done is the place where the contract was made. *Peretzman v. Borochoff,* 58 Ga. App. 838, 200 S.E. 331 (1938); Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir. 1998).

"It is clear that adoption of the UCC merely had the effect of applying Georgia's ordinary conflict-of-laws rule to matters within the scope of the UCC, except when the UCC specifies another choice-of-law rule. L. Lynn Hogue, Law in A Parallel Universe: Erie's Betrayal, Diversity Jurisdiction, Georgia Conflict of Laws Questions in Contracts Cases in the Eleventh Circuit, and Certification Reform, 11 Ga. St. U. L. Rev. 531, 539 (1995). After he adoption of the UCC by Georgia, the application of the rule of *lex loci contractus* was reaffirmed by the Georgia Court of Appeals in 1984, when that Court refused to adopt the center-of-gravity approach. The Georgia

Court of Appeals then declared that "[u]ntil it becomes clear that a better rule exists, we will adhere to our traditional approach." Gen. Tel. Co. of Se. v. Trimm, 252 Ga. 95, 96, 311 S.E.2d 460, 462 (1984).

Since, in the instant case, the promissory note was not located in Georgia, under the Georgia conflicts rule, Georgia law would not govern the negotiation or transfer of the note. The result is actually the same as the result under the Georgia UCC, because the negotiation and transfer of the note would be governed by the Uniform Commercial Code as adopted in the other state.

### VIII. IN THE YOU CASE, THE GEORGIA SUPREME COURT FAILED TO CONSIDER THE FACT THAT ONE CANNOT POSSIBLY TRANSFER WHAT HE DOES NOT HAVE.

There is an ancient Roman legal maxim which states, *"Nemo dat quod non habet."* We mention this maxim not because it has specifically been adopted in Georgia, but because it states what ought to be obvious in a pithy manner. The maxim declares that one cannot give away what he does not have. As stated previously, in the instant case, MERS is the grantee of the security deed, and MERS was never the holder of the note and never had any interest whatsoever in the indebtedness.

Since MERS did not have any interest in the indebtedness secured by the security deed, even if MERS had made a valid assignment of the security deed, O.C.G.A. § 44-14-64(b) could not be applied to that transaction to provide that the assignment by MERS transferred the Promissory Note which had been given to Guaranteed Rate, Inc.

## IX. **THIS COURT ERRED IN FINDING THAT PLAINTIFF HAD ABANDONED HIS CHALLENGE TO THE VALIDITY OF THE ASSIGNMENT.**

Plaintiff did not at any time abandon his claim that the purported assignment of the Security Deed by MERS to Ocwen is a fabrication, and, consequently, is void. A review of the two documents submitted by Plaintiff in support of his Memorandum in Opposition to Defendants' Motion for Summary Judgment clearly shows that Plaintiff continued to assert that the purported assignment was invalid. Plaintiff still takes that position today and should not be precluded by the Court from presenting his arguments in support of that assertion.

Plaintiff did not previously present these arguments, because Plaintiff was following the law of the case as declared by this Court in its Order, dated July 7, 2011, in which it granted in part and denied in part Defendants' Motion to Dismiss. Thus, Plaintiff directed his attention to the fact that Ocwen was not his creditor nor his secured creditor, because Ocwen was not the Note Holder. Indeed, Ocwen has repeatedly presented fabricated copies of the Note to this Court and did not provide the original Note for inspection by Plaintiff as ordered by this Court.

## CONCLUSION

The fact that Georgia Supreme Court in *You* declared that foreclosure notices do not have to identify the person or entity that has initiated and is prosecuting the non-judicial foreclosure is of little consequence, other than increasing the time, trouble and expense involved in wrongful foreclosure actions by making it more difficult to prove whether or not the non-judicial foreclosure was brought by a person or entity that was entitled to do so. In the

end, O.C.G.A. § 44-162-2 still requires that the notice be sent by the secured creditor, even if the notice does not have to reveal the identity of the secured creditor.

For all the reasons stated above, Plaintiff respectfully submits that Defendants' Motion for Summary Judgment should have been denied (except with respect to the RICO claim and other claims, such as TILA and RESPA, which Plaintiff previously abandoned).

This 5th day of July 2013.

Respectfully submitted,

MICHAEL L. MORGAN
Petitioner-Plaintiff
Pro se

110 Addison Court
Roswell, Georgia 30075
(404) 246-7246